JAMES F. GILE, Administrator, *vs.* NATHANIEL STEVENS & others.

The benefit occasioned to a meadow below a milldam, by a ditch dug at the time of the erection of the dam by the owner of the dam through his own land below the meadow cannot be set off against the damages done to the meadow by subsequent flowing occasioned by the dam; and the cost of the ditch is immaterial in assessing such damages.

On the trial of a complaint under the mill act, evidence that the withholding of water in the spring from other lands, situated like the complainant's, was a benefit greater than the injury occasioned by letting down the water in the dry season, is inadmissible, unless it appears that the water was withheld from the complainant's land in the spring, as well as suffered to flow upon it in the dry season.

Peat, dry or in process of curing upon a meadow, is personal property, and damages occasioned to it by the flowing of the meadow, cannot be recovered by complaint under the mill act.

Damages for the loss of manure placed upon a meadow for the purpose of cultivating it cannot be recovered, as a special item of damage, by complaint under the mill act.

Damages caused by flowing land below a milldam, unless caused by wrongful overflowing of the land, may be recovered by complaint under the Rev. Sts. *c.* 116.

COMPLAINT under the mill act. After a trial before a sheriff's jury, the presiding officer certified to the court of common pleas the following case :

The respondents' mill is on Little River in Haverhill, which is principally relied on for water. The dam complained of was erected in 1839 by Ezekiel Hale, under whom the respondents claim, on his own land at the outlet of Great Pond, for the purpose of making a reservoir of water for the use of this mill in the dry season, and has since been used for that purpose. The water of the pond, when required for use, is brought through a small natural stream into Little River above the mill. The complainant's meadow is situated on this small stream, and some distance below the respondents' dam.

Hale, before he erected this dam, and in order to draw water more readily from the pond, purchased part of the meadow below the complainant's land, and dug a new channel through it, lowering the stream and somewhat altering its course, and cleared out the stream opposite the complainant's land, and thus drained that land, which was before wet and miry, and increased its value and enabled the plaintiff to improve it, which he did.

Until five or six years ago, the water was drawn off from the pond, when it was needed for use in the dry season, in such a manner as not to overflow the complainant's land ; but since that time " it has been let off usually in the months of August and September, in such quantities as at times to overflow the complainant's meadow, and to so saturate it with water as to stop all improvements, and greatly to injure, if not destroy, those which had been made ; manure, which the complainant's intestate had carted on the meadow for the purpose of cultivating it, has been overflowed, washed away and lost ; peat, dry or in process of curing upon the meadow, was overflowed and destroyed, and water remained upon the meadow for a length of time, and in so large quantities as were never observed before." For this overflowing, during the time set out in the complaint, and down to the death of the complainant's intestate, the complainant claimed damages.

The respondents offered evidence of the cost of the new channel cut below the complainant's land. But the evidence was excluded.

" Owners of meadow land, either contiguous to that of the complainant, or similarly situated, who were familiar with the effect of flowing and withholding the water from their meadows, were introduced as witnesses, and asked their opinion whether the withholding of the water in the spring did not benefit their own meadows more than they were injured by letting it flow upon them during the dry season." This evidence was not admitted.

The respondents requested that the jury might be instructed that the remedy for overrunning a meadow below a dam, by letting out at a particular time more water than the natural channel of the stream would accommodate, was by action at common law, and not in this form of proceeding; that " the true measure of damages is to be determined by taking into account the former condition of the meadow, and its capacity for improvement when the water ran in its natural channel, and the right of the respondents to flow the water back in the new channel, to a height not exceeding the old stream ;" and that " the increased facilities, made by the mill-owner for draining

water from the complainant's meadow, are to be taken into account, in connection with any injury occasioned by letting more water from the dam at particular seasons, than the ordinary run of water before the erection of the dam."

The presiding officer declined to give either of the instructions asked for by the respondents; but at the request of the complainants instructed the jury that " if by reason of the ditching originally done by those under whom respondents claim, the petitioner was enabled by further improvements made by himself to increase the value and productiveness of his meadow, and he did so, that increased value and productiveness are the property of the petitioner; and if the respondents, after such increased value and productiveness, but during the time set out in the complaint, changed the manner of managing the water by reason of their dam, so as thereby to cause the water to flow over petitioner's meadow to its injury, then the respondents are responsible for all the injury to it in its improved state, caused thereby; and the original benefit cannot be set off against such damages;" that " the jury must allow to the complainant for all damages done to the crops of his meadow, and for loss of peat and manure caused thereby; also for the damage done to the land by such flowing during the time set out in the complaint, and down to the intestate's death, by reducing its actual value; and a proper means of arriving at this part of the damages will be to find how much the land was reduced in value by flowing, during that time, and the amount it was so reduced will be a fair measure of this part of the damages."

The jury were further instructed " that if the meadow of the intestate was benefited by the respondents' dam, by the withholding of the water in the wet season and letting it on in the dry, or in any other manner by the dam or its operations, then they should allow, by way of set-off, all such benefits, and deduct the same from any damages they might find."

The verdict was for the petitioner. The respondents excepted to all the above rulings and instructions, and, the verdict being accepted by the court of common pleas, appealed to this court, before whom the case was argued in February 1859

*J. G. Abbott & O. Stevens*, for the respondents.

*D. S. Richardson*, for the complainant.

METCALF, J.   1. The cost of the channel made by the respondents below the land flowed by them was immaterial. Evidence of its cost was therefore rightly excluded.

2. Testimony as to the effect, on other lands, of the withholding of water therefrom in the spring and setting it on in the dry season, was rightly rejected ; because it does not appear that water was withheld from the complainant's land, in the spring. Such may have been the fact, but the case does not show it. Both the causes and the effect on other lands are not shown to have operated on the land of the complainant.

3. We are of opinion that the jury were wrongly instructed that they should give damages " for loss of peat and manure," caused by flowing the land.   The peat, which was on the land, was personal property ; and damages for injury to it are not recoverable in this process.   And if the manure was not part of the real estate, the complainant is not entitled to damages for the loss of it by flowing.   The value of real estate is increased by the manure that forms part of it, and of course the damage to the realty, caused by flowing, may be greater when it is manured than when it is not.   But there is no reason for making the manure a special item of damage.   Whether the manure was, in this case, a part of the real estate, does not appear.   On this ground the exceptions are sustained.

4. Since the passing of the *St.* of 1824, *c.* 153, (which is incorporated into the Rev. Sts. *c.* 116,) this process has been maintainable for the recovery of damages caused by flowing land below a milldam.   *Shaw* v. *Wells*, 5 Cush. 537.   But damages caused by occasional abuse of the right of flowing are not thus recoverable.   For wrongful overflowing of land below a dam, the remedy is by action at law.   Assuming that the present process is for damages recoverable under it, we are of opinion that the other instructions given to the jury were substantially correct, and that the respondents have no legal ground of exception to the denial of their prayers for different instructions.